1  Devin A. McRae, State Bar Number 223239
     dmcrae@earlysullivan.com
2  Peter Scott, State Bar Number 247786
     pscott@earlysullivan.com
3  Brett G. Moore, State Bar Number 311637
     bmoore@earlysullivan.com
4  EARLY SULLIVAN WRIGHT
     GIZER & McRAE LLP
5  6420 Wilshire Boulevard, 17th Floor
   Los Angeles, California 90048
6  Telephone:  (323) 301-4660
   Facsimile:  (323) 301-4676
7
   Attorneys for Plaintiff SCOTT FELLOWS
8  and JACK MACKIE PICTURES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT FELLOWS, an individual; and JACK MACKIE PICTURES, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>BIG TIME RUSH TOURING, LLC, a Delaware limited liability company; SONY MUSIC ENTERTAINMENT, a Delaware general partnership; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.<br><br>**PLAINTIFFS SCOTT FELLOWS AND JACK MACKIE PICTURES' COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT**<br><br>2. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>3. **INTERFERENCE WITH CONTRACTUAL RELATIONS**<br><br>4. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br><br>5. **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br><br>6. **ACCOUNTING**<br><br>**DEMAND FOR JURY TRIAL** |

5814578.3

**COMPLAINT**

Plaintiffs Scott Fellows and Jack Mackie Pictures ("Plaintiffs") bring this action against Defendants Big Time Rush Touring, LLC and Sony Music Entertainment ("Defendants"), as follows:

## INTRODUCTION

1. Scott Fellows, through his loan out company, Jack Mackie Pictures ("JMP"), is the creative mind behind the hit television series *Big Time Rush*, which ran on Nickelodeon for four seasons from 2009 to 2013. The show features four fictional friends who moved from Minnesota to Hollywood to form a boy band with support from a prominent music producer. The episodes frequently contain original music performed by the fictional boy band, also called Big Time Rush.

2. The success of both the show and the music garnered support for a real, live music concert tour of Big Time Rush, featuring the characters and music from the show created by Fellows. Nickelodeon's parent company, Viacom International, Inc. ("Viacom") and Sony Music Entertainment ("Sony Music"), through Sony Music's subsidiary entity Big Time Rush Touring, LLC ("BTR Touring"), contracted with Fellows to share 3.75% of net touring revenue for the tour. However, after the success of the initial two tours, and with plans for subsequent tours, Sony Music concocted a bad faith entity shell game and restructured its inter-company arrangements to cheat and cut Plaintiffs out of their share of the tour revenues, which, upon information and belief, are substantial and exceed the jurisdictional minimum of this Court.

## PARTIES

3. Plaintiff Scott Fellows is, and at all relevant times was, an individual residing in the County of Los Angeles, California.

4. Plaintiff Jack Mackie Pictures is, and at all relevant times was, a California corporation with its principal place of business in the County of Los Angeles, California.

5. Defendant Big Time Rush Touring, LLC is, and at all relevant times was,

a Delaware limited liability company and, on information and belief, its principal place of business is in New York, New York.

6. Defendant Sony Music Entertainment is, and at all relevant times was, a Delaware general partnership and, on information and belief, its principal place of business is in New York, New York.

7. Does 1 through 20, inclusive, whether individual, corporate, associate, or otherwise, are Defendants whose true names and capacities are, at this time, unknown to Plaintiffs. Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, all of the Defendants sued herein are subsidiaries or other persons or entities authorized to act on behalf of the named Defendants herein. Plaintiffs are informed and believe, and thereon allege, that each of these fictitiously named Defendants are responsible in some manner for the acts, occurrences, and liabilities herein alleged. When the true names and capacities of Does 1 through 20 become known to Plaintiffs, Plaintiffs will seek leave of Court to amend this Complaint to insert said true names and capacities. Whenever a reference is made to "Defendant" herein, it is intended to include the named defendant as well as the aforesaid Doe Defendants.

8. On information and belief, at all times herein material, each Defendant was completely dominated and controlled by its co-Defendants and each was the alter-ego of the other. Whenever and wherever reference is made in this Complaint to any conduct by Defendant or Defendants, such allegations and references shall also be deemed to mean the conduct of each of the Defendants, acting individually, jointly and severally. Whenever and wherever reference is made to individuals who are not named as Defendants in this Complaint, but were employees and/or agents of Defendants, such individuals at all relevant times acted on behalf of Defendants named in this Complaint within the scope of their respective employment.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

Plaintiffs are citizens of the State of California and diversity exists because all named Defendants are citizens of New York. The amount in controversy exceeds $75,000. This case involves entities with sufficient contacts with California to make proper the exercise of personal jurisdiction over them.

10. Venue is proper in this Court. A substantial part of the acts or omissions giving rise to the claims alleged occurred in Los Angeles County, California.

## FACTUAL ALLEGATIONS

11. In 2007, Plaintiff Scott Fellows entered into an agreement with Storybook Productions Inc. ("Storybook") for services in connection with a proposed live action television pilot and series ("Storybook Agreement") concerning a project which was then known as *All for One*, which subsequently became *Big Time Rush*. The Storybook Agreement contemplated Fellows drafting a pilot episode with Storybook having the option to order more episodes and the option to renew the show for more seasons.

12. The Storybook Agreement provides that it is governed by a collective bargaining agreement between Storybook and the WGA, which was applicable to Fellows' work pursuant to the Storybook Agreement. The Storybook Agreement further acknowledges that Fellows retained "separated rights" as to the project despite Fellows providing services on a work-for-hire basis.

13. In connection with the Storybook Agreement, JMP also entered into a loanout agreement with Storybook whereby JMP agreed to Fellows performing services for Storybook.

14. Storybook is a longtime collaborator with Nickelodeon, that develops and produces shows and content for the network.

15. *Big Time Rush* was picked up by Nickelodeon and premiered in 2009 to immediate success. Nickelodeon ultimately produced four total seasons of *Big Time Rush* with Fellows writing each episode. The success also lead to a made-for-television movie called "Big Time Movie."

16. Piggybacking on the popularity of the television and movie, Sony Music began acquiring the rights to promote a live musical tour of Big Time Rush, taking the band from fiction and making it a reality. It formed a wholly owned subsidiary, BTR Touring, which became a real-life managing entity for the actors portraying the members of the band in the *Big Time Rush* show.

17. Recognizing that Fellows had retained certain rights to *Big Time Rush*, BTR Touring and JMP entered into an agreement ("BTR Touring Agreement") whereby JMP would be paid 3.75% of the "Net Live Touring Income" from Big Time Rush's live musical concerts and paid concert appearances commencing on or after January 1, 2012 and "on a prospective basis." In exchange for this revenue sharing agreement, among other things, Plaintiffs assigned and granted to BTR Touring, their rights and interest to the "Tour Rights," which are the intellectual property rights underpinning Big Time Rush's live musical concerts and performances. A true and correct copy of the BTR Touring Agreement is attached hereto as <u>Exhibit A</u>.

18. The BTR Touring Agreement further provides that BTR Touring would account to JMP within 90 days following the end of each touring cycle.

19. Between January 1, 2012 and present, Big Time Rush has gone on international tours four times, with a fifth planned to commence in July 2025. While JMP received payments and an accounting from the initial 2011-2012 tour, "Elevate," and the 2013-2014 tour, "24/Seven," neither Fellows nor JMP have received payments from the 2022 "Reunion" tour and no accounting was provided within 90 days.

20. When Fellows inquired with Sony Music about the reason for the lack of payments and failure to account in regard to the Reunion Tour, Sony Music provided little clarity, instead explaining that an unrelated tour participation agreement had expired in 2017. It then asserted that the arrangement had been restructured to eliminate the involvement of BTR Touring, and that, now, the individual band members had entered into a trademark licensing agreement with Sony Music and

Viacom in 2021 ("2021 Licensing Agreement") which provided them the right to use the Big Time Rush trademark on tour in exchange for a payment of a percentage of revenues generated from their live musical performances.[1] In effect, Sony Music restructured its inter-company arrangements to remove the involvement of BTR Touring – Sony Music's wholly owned subsidiary and the entity through which Plaintiffs had contracted for their revenue share – and, instead, contracted directly with the individual members of Big Time Rush. The restructuring was illusory, however, and designed to cut-out Plaintiffs' revenue sharing rights in subsequent tour income.

21.  However, Sony Music's proffered reasons for the lack of payments and accounting are nonsensical. None of the terms in the BTR Touring Agreement provide that JMP's right to receive 3.75% of Net Live Touring Income or right to an accounting expire. Instead, based on the 2021 Licensing Agreement, it is apparent that Sony Music deliberately acted to cut Fellows off from his contractual rights under the BTR Touring Agreement by restructuring its *inter-company* arrangements and entering into new agreements directly with the individual members of the Big Time Rush group, without assigning or assuming the obligations of the BTR Touring Agreement or otherwise ensuring that JMP and/or Fellows's vested contractual rights were preserved.

22.  Upon information and belief, Sony has generated substantial revenues from subsequent Big Time Rush live concert tours and has failed to account to JMP and/or Fellows for their right to receive 3.75% of Net Live Touring Income in violation of the BTR Touring Agreement.

////

---

[1] A copy of the 2021 Licensing Agreement that was provided to Plaintiff from Sony Music in redacted form is attached hereto as <u>Exhibit B</u>. Upon information and belief, the complete, unredacted document is within the possession, custody and control of Sony Music.



# FIRST CLAIM FOR RELIEF

**(Breach of Written Agreement Against BTR Touring, Sony Music and DOES 1-10)**

23.   Plaintiffs incorporate by reference the foregoing allegations as if set forth in full herein.

24.   BTR Touring entered into a valid and legally enforceable BTR Touring Agreement with Plaintiffs.

25.   Among other things, BTR Touring was and is required to account to JMP, with respect to live musical concerts and paid concert appearances by Big Time Rush commencing on or after January 1, 2012 and on a prospective basis, in an amount equal to 3.75% of "Net Live Touring Income" (as defined in the BTR Touring Agreement) within 90 days following the end of each touring cycle.

26.   Plaintiffs have fulfilled all, or substantially all, of their obligations under the BTR Touring Agreement or such obligations have otherwise been excused and all of the conditions that were required for BTR Touring to perform have occurred.

27.   BTR Touring has breached the BTR Touring Agreement by failing to account to JMP within the specified time periods as required by the terms of the BTR Touring Agreement.

28.   Sony Music is the alter-ego and/or successor and assign of BTR Touring and, thus, is liable to Plaintiffs in connection with the foregoing breaches.

29.   The foregoing breaches and continuing breaches have directly and proximately caused and will continue to cause Plaintiffs damages including, but not limited to, lost revenue in an amount to be determined at trial.

# SECOND CLAIM FOR RELIEF

**(Breach of Implied Covenant of Good Faith and Fair Dealing Against BTR Touring, Sony Music and DOES 1-10)**

30.   Plaintiffs incorporate by reference the foregoing allegations as if set forth in full herein.

31. BTR Touring entered into a valid and legally enforceable BTR Touring Agreement with Plaintiffs.

32. Among other things, BTR Touring was and is required to account to JMP, with respect to live musical concerts and paid concert appearances by Big Time Rush commencing on or after January 1, 2012 and on a prospective basis, in an amount equal to 3.75% of "Net Live Touring Income" (as defined in the BTR Touring Agreement) within 90 days following the end of each touring cycle.

33. Based on the foregoing, Plaintiffs had a reasonable expectation and, indeed, the BTR Touring Agreement provided, that they would be paid their 3.75% of Net Live Touring Income from Big Time Rush live musical concerts on a prospective basis into the future and that such rights to payment would not be usurped, abrogated or otherwise interfered with.

34. Plaintiffs have fulfilled all, or substantially all, of their obligations under the BTR Touring Agreement or such obligations have otherwise been excused.

35. In every contract there exists an implied covenant of duty of good faith and fair dealing that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

36. Defendants BTR Touring and Sony Music breached this duty of good faith and fair dealing by unreasonably and in bad faith restructuring the touring agreements and arrangements with the Big Time Rush members in order to cut out the participation and involvement of BTR Touring and to abrogate and devalue Plaintiffs' contractual rights under the BTR Touring Agreement.

37. Sony Music is the alter-ego and/or successor and assign of BTR Touring and, thus, is liable to Plaintiffs in connection with the foregoing breaches. Further, BTR Touring's conduct was undertaken, ratified, authorized and approved by Sony Music.

38. As a direct and proximate result of BTR Touring and Sony Music's unfair interference with Plaintiffs' right to receive benefits under the BTR Touring Agreement, Plaintiffs have been harmed in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

**(Intentional Interference with Contractual Relations Against Sony Music and DOES 1-10)**

39. Plaintiffs incorporate by reference the foregoing allegations as if set forth in full herein.

40. BTR Touring entered into a valid and legally enforceable BTR Touring Agreement with Plaintiffs.

41. Among other things, BTR Touring was and is required to account to JMP, with respect to live musical concerts and paid concert appearances by Big Time Rush commencing on or after January 1, 2012 and on a prospective basis, in an amount equal to 3.75% of "Net Live Touring Income" (as defined in the BTR Touring Agreement) within 90 days following the end of each touring cycle.

42. Sony Music had knowledge of the BTR Touring Agreement and Plaintiffs' rights thereunder prior to initiating its scheme to usurp and cut Plaintiffs out from participation in further Big Time Rush touring revenue.

43. Sony Music engaged in intentional acts designed to interfere with Plaintiffs' rights under the BTR Touring Agreement as set forth above.

44. Sony Music caused a disruption to the contractual relationship between BTR Touring and Plaintiffs.

45. As a direct and proximate result of Sony Music's intentional acts, Plaintiffs have been damaged in an amount to be determined at trial.

46. Plaintiffs are informed and believe, and on that basis allege, that Sony Music's acts were willful, wanton, malicious and oppressive and its actions and omissions constitute oppression, fraud, and/or malice and justify an award of exemplary and punitive damages against Sony Music.

## FOURTH CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Relations against Sony Music and DOES 1-10)

47. Plaintiffs incorporate by reference the foregoing allegations as if set forth in full herein.

48. BTR Touring and Plaintiffs have an economic relationship by virtue of the BTR Touring Agreement and Plaintiffs had and have a reasonable expectation that that relationship will continue in perpetuity and on a prospective basis with respect to Big Time Rush live musical concert appearances to Plaintiffs' benefit.

49. Sony Music was aware of Plaintiffs' economic relationship with BTR Touring and reasonable expectation that such relationship would continue on a prospective basis.

50. By virtue of the actions alleged above, Sony Music took intentional steps to disrupt Plaintiffs' economic relationship with BTR Touring, which steps succeeded in light of Sony Music's exclusion of Plaintiffs from participation in subsequent Big Time Rush Net Live Touring Income and effective nullification of Plaintiffs' economic relationship with BTR Touring.

51. Sony Music caused a disruption to the economic relationship between BTR Touring and Plaintiffs.

52. As a direct and proximate result of Sony Music's intentional acts, Plaintiffs have been damaged in an amount to be determined at trial.

53. Plaintiffs are informed and believe, and on that basis allege, that Sony Music's acts were willful, wanton, malicious and oppressive and its actions and omissions constitute oppression, fraud, and/or malice and justify an award of exemplary and punitive damages against Sony Music.

## FIFTH CLAIM FOR RELIEF

**(Negligent Interference with Prospective Economic Relations against Sony Music and DOES 1-10)**

54. Plaintiffs incorporate by reference the foregoing allegations as if set forth in full herein.

55. BTR Touring and Plaintiffs have an economic relationship by virtue of the BTR Touring Agreement and Plaintiffs had and have a reasonable expectation that that relationship will continue in perpetuity and on a prospective basis with respect to Big Time Rush live musical concert appearances to Plaintiffs' benefit.

56. Sony Music was aware or should have been aware of Plaintiffs' economic relationship with BTR Touring and reasonable expectation that such relationship would continue on a prospective basis.

57. Sony Music had a duty to refrain from interfering with Plaintiffs' economic relationship with BTR Touring.

58. By virtue of the actions alleged above, Sony Music negligently took steps to disrupt Plaintiffs' economic relationship with BTR Touring, which steps succeeded in light of Sony Music's exclusion of Plaintiffs from participation in subsequent Big Time Rush Net Live Touring Income and effective nullification of Plaintiffs' economic relationship with BTR Touring.

59. Sony Music caused a disruption to the economic relationship between BTR Touring and Plaintiffs.

60. As a direct and proximate result of Sony Music's acts, Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

**(Accounting Against All Defendants)**

61. Plaintiffs incorporate by reference the foregoing allegations as if set forth in full herein.

62. By virtue of Plaintiffs' contractual and economic relationship with BTR Touring and rights to receive contingent compensation based on Big Time Rush live musical performances or, in the alternative, by virtue of the parties' course of dealing Plaintiff is entitled to an accounting from Defendants. Defendants are in the best position to know the true and correct amount of revenues generated from Big Time Rush live musical concert performances to which Plaintiffs are entitled to a percentage.

63. Defendants have failed and refused to render any accounting to Plaintiff. Thus, the true and correct balance due to Plaintiffs can only be ascertained by an accounting performed under the supervision of the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against BTR Touring and Sony Music as follows:

1. For compensatory damages, including interest at the maximum statutory rate according to proof, in an amount to proven at trial;

2. For punitive and exemplary damages as available;

3. For an accounting;

4. Costs of suit incurred herein, including reasonable attorneys' fees and expenses;

5. For such other and further relief as the Court deems proper.

Dated: July 3, 2025

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By: _____
Devin A. McRae
Peter Scott
Brett G. Moore
Attorneys for Plaintiffs SCOTT FELLOWS
and JACK MACKIE PICTURES

## DEMAND FOR JURY TRIAL

Plaintiffs Scott Fellows and Jack Mackie Pictures hereby demand trial by jury for all issues so triable.

Dated: July 3, 2025

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By: _____
Devin A. McRae
Peter Scott
Brett G. Moore
Attorneys for Plaintiffs SCOTT FELLOWS
and JACK MACKIE PICTURES